**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Jerry Miller,** | ) | |
| | ) | **No. 08 C 773** |
| **Plaintiff,** | ) | |
| | ) | **Judge Conlon** |
| **v.** | ) | |
| | ) | |
| **City of Chicago, et al.** | ) | **Magistrate Judge Cole** |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF CHICAGO'S MOTION TO BIFURCATE PLAINTIFF'S § 1983 CLAIMS AGAINST IT, AND STAY DISCOVERY AND TRIAL ON THOSE CLAIMS.**

Plaintiff Jerry Miller, who was falsely convicted of rape and related crimes and spent almost 25 years in prison before he was exonerated by DNA testing, has alleged that his conviction and imprisonment were caused by wrongdoing by the City of Chicago as well as individual police officers. With respect to the City, plaintiff has alleged that:

> The City of Chicago created and maintained a *de facto* custom, policy or practice of deliberate indifference to the constitutional rights of citizens, by failing adequately to train and supervise and discipline its police officers and members of the Crime Laboratory, including the individual defendants in this case, to ensure that they:
>
> A. employed proper and non-suggestive identification techniques;
> B. faithfully represented material facts when seeking criminal charges;
> C. adequately tested physical evidence, including palm prints, finger prints and bodily fluids and fully and accurately reported the results of that testing; and
> D. disclosed material exculpatory and impeachment information to prosecutors.

Complaint, DE 1 ¶ 107. The City, in the guise of a motion for bifurcation, is essentially moving

to dismiss this claim against it,[1] not because it is deficient legally or factually, but because litigation of this claim would force it to do a lot of work, would entail the production of documents which the City apparently does not want to produce, and according to the City would not advance plaintiff's claim for damages. For several different reasons the motion should be denied.

**1. The City's Claim That the Policy and Practice Claim is Unnecessary is Incorrect.**

A major part of the City's argument is that the policy and practice claim, and the attendant discovery, is unnecessary, since it has stipulated that it will pay any judgment in the case. In making this claim, the City engages in a sleight of hand, appearing to promise one thing in its motion and but setting forth quite another in the stipulation which it is proposing.

In its motion, the City claims that in the stipulation it has agreed to "entry of judgment for compensatory damages if the finder of fact in this case finds that *any City employee* violated plaintiff's constitutional rights as alleged in his complaint." Motion, DE 45, p. 3 (emphasis added). The problem with this stipulation is that it does not actually promise to pay a judgment if *any* City employee violated plaintiff's constitutional rights; rather, it promises to pay a judgment if plaintiff recovers a judgment against a City employee who is named as a defendant, and who is on trial before this jury. The difference in this case between the apparent promise and the actual effect of the promise made is dramatic.

One of the named defendants, Darryl Depke, is, according to the City, dead. If this

[1]Defendant City, and the other defendants, have not yet filed an Answer pursuant to FRCP Rule 8, or a Rule 12 pleading, although the time for them to do so has expired.

information turns out to be accurate, and if his death occurred too long ago for his estate to be substituted as a defendant, plaintiff's claims against Depke will never go before the jury, and thus the City would, pursuant to their proposed stipulation, not be liable for his misconduct. Depke is a central figure in plaintiff's claims. The Complaint alleges that:

> Fligelman and Depke fabricated evidence concerning the arrest of Mr. Miller and their prior interaction with him in order to justify their illegal actions and to falsely implicate Mr. Miller.
>
> For example, Fligelman and Depke reported that Mr. Miller had voluntarily gone with them to the police station for questioning when in fact Mr. Miller was arrested and taken to the station against his will and in handcuffs. They further misrepresented that Mr. Miller was observed on September 11, 1981, wearing a hairnet which matched the description of the assailant and engaging in suspicious behavior. In fact, Mr. Miller, was not wearing a hairnet when he encountered the police on September 11, 1981 and was not engaging in suspicious behavior.
>
> ***
>
> [D]efendants . . . [including] Depke organized and then conducted a line-up that was viewed by witnesses Boston and Stewart.
>
> (E) Mr. Miller looked nothing like the actual assailant, Weeks, who was seen by both Stewart and Boston. Notwithstanding the fact that Miller looked nothing like the actual perpetrator, Boston and Stewart identified Miller as the attacker.
>
> (F) These misidentifications were the result of intentional suggestions by defendant officers . . . [including] Depke who indicated to witnesses Boston and Stewart that they should select Miller as the assailant.

Complaint ¶¶ 41-42, 47-49. Thus, even if the City's motion for bifurcation was granted, and plaintiff then lost at trial against the individual defendants who were present before the jury, he would still be entitled to proceed with his claim against the City based on the allegations against Depke. Thus, the City's claim that bifurcation would save time and resources is illusory.

Yet another scenario which demonstrates that the City's motion is ill-founded, is the possibility that individual defendants may plead qualified immunity, and escape liability on that basis. Pursuant to the City's proposed stipulation, it would not be liable if an individual

defendant were successful in pleading qualified immunity, since the wrongdoing of that defendant would not be determined by the jury. In this case, none of the individual defendants have yet filed responsive pleadings to the plaintiff's complaint, so it is unclear whether they will plead qualified immunity, but it is routine for them to do so. Thus, this provides yet another example of how the City's motion would not lead to any saving of time or resources, but quite the opposite. Instead of one set of proceedings, where the culpability of all defendants is examined in one set of discovery and determined at one trial, the City's proposal is to have successive proceedings, including successive discovery and successive trials, the first against the individual officers and the second against it. Clearly this would not save time but waste it and potentially delay the plaintiff's right to compensation for the 25 years which have been taken from him.

**2. The City has Failed to Satisfy Its Burden of Establishing that Bifurcation is Warranted.**

The general rule is that all claims set forth in a complaint should be dealt with at the same time. *See Caterpillar, Inc. v. Deere & Co.*, 1997 U.S. Dist. LEXIS *3 (N.D. Ill.) (well-established that the party moving for bifurcation "bears the burden of proving that separate trials are justified"), citing 5 Moore's Federal Practice, ¶ 42.03[1]. *See also, Terrell v. Childers*, 1996 U.S. Dist. LEXIS 9618, *42 (N.D. Ill.) (Aspen, J.) ("I proceed from the position of the Federal Rules of Civil Procedure; specifically, that the unitary resolution of lawsuits is sought. A single trial on the merits of all contested issues and claims of the parties is preferable to their piecemeal adjudication") (citing Rule 42 Advisory Committee Notes and 9 Wright & Miller, Federal

Practice & Procedure, § 2388).

There is no question but that plaintiff's policy and practice claim sets forth a claim against the City which is separate from, although related to, the claim against the individual defendants. In *Monell v. Department of Social Services fo the City of New York*, 436 U.S. 658 (1978), the Supreme Court held that plaintiffs may sue municipalities for independent, non-derivative liability where injuries were caused by unconstitutional policies, practices, or customs. Two years later, in *Owen v. City of Independence*, 445 U.S. 622 (1980), the Court highlighted the independent nature of a *Monell* claim by holding that a municipality could be held liable for its unconstitutional policies even when the individual municipal defendants were adjudged to have qualified immunity. In denying a qualified immunity defense to the City, the Supreme Court relied upon the important deterrent purpose incorporated in a § 1983 action, and it underscored the special importance such deterrence plays when the defendant is a municipality:

> How "uniquely amiss" it would be, therefore, if the government itself – "the social organ to which all in our society look for the promotion of liberty, justice, fair and equal treatment, and the setting of worthy norms and goals for social conduct" – were permitted to disavow liability for the injury it has begotten. *See Adickes v. Kress & Co.*, 398 U.S. 144 (1970) (Brennan, J.) A damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees, and the importance of assuring its efficacy is only accentuated when the wrongdoer is the institution that has been established to protect the very rights it has transgressed.*** [Section 1983] was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well. . . . The knowledge that a municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights.

*Owen*, 445 U.S. at 651-52.

Courts in this District have reached analogous holdings. In *Medina v. City of Chicago*, 100 F. Supp.2d 893 (N.D. Ill. 2000) (Kennelly, J.), the City sought to postpone the trial of the municipal policy claims arising out of an alleged beating by relying, as the City does here, on its statutory indemnification obligation to argue that the claim was moot. Rejecting the City's arguments, the court in *Medina* explained that "there are . . . non-economic benefits that one can obtain from suing a municipality that are less likely when the plaintiff pursues (or is permitted to pursue) only the individual officer." *Id.* at 896. Those benefits, *Medina* recognized, include achieving the reformative and deterrent purposes of Section 1983: "a judgment against a police officer (even one paid for by the municipality) may be less likely to prompt the municipality to act to prevent future violations than a judgment naming the municipality itself as responsible based on its policies and customs." *Id.* Many other courts in this district have denied similar requests for bifurcation. *See Bond v. Utreras*, 2006 U.S. Dist. LEXIS 10501 (N.D. Ill. Mar. 10, 2006) (Keys, J.); *Doles v. Harvey*, 04 C 0797 (Keys, J.); *Kasper v. City of Chicago*, No. 04 C 1041 (St. Eve, J.); *Williams v. Nine Fifty Ltd., et al.*, No. 03 C 5077 (Gottschall, J.); *Patterson v. Burge*, No. 03 C 4433 (Gottschall, J.); *Williams v. City of Chicago*; No. 03 C 4388 (Pallmeyer, J.); *Daval v. City of Chicago*, No. 02 C 7955 (Leinenweber, J.); and *Waits v. City of Chicago*, No. 01 C 4010 (Hibbler, J.). While the City points to other cases in which bifurcation was ordered, each of those cases was decided on the basis that the defendant had made a specific showing of prejudice, and had satisfied its burden of proving that separate discovery and trials were necessary.

Here, the City has failed to provide any specific problems with following the general rule

that all claims should be discovered and tried simultaneously, but has rather resorted to general objections, lacking any basis in the record. Thus, the City has claimed that defending against the plaintiff's policy and practice claims would be costly, and that "[t]hese costs primarily take the form of producing thousands of documents, producing Rule 30(b)(6) witnesses for deposition, and retaining and defending against expert witnesses." DE 45 p. 2 ¶ 4. The City ignores, however, that production of such documents and 30(b)(6) witnesses will be required in any case, since proof of the City's policy with respect to the claimed misconduct will be relevant to whether the individual officers deviated from that policy, and if so, why. Additionally, much of the discovery which the City apparently refers to - such as other instances of misconduct by the named defendants, the training which they underwent, and whether they were disciplined for other infractions - will be relevant to the claims against the individual officers, and potentially admissible under Fed. R. Evid. 404(b), and thus must be produced in any event. While the City will, presumably, need to call an expert witness to defend its policies, this is a routine aspect of litigation, and fails to establish the level of prejudice necessary for this Court to bifurcate discovery and trial.

The City also claims that bifurcation of the claims will protect the individual defendants, since they will be shielded from "extraneous evidence regarding the multiple municipal customs, policies, and practices that plaintiff alleges are deficient." DE 45 p. 2 ¶ 5. This ignores, however, that evidence of the relevant policies will be important to discovery from the individual defendants, since plaintiff's counsel will be entitled to ask them about their understanding of the City policies and whether they complied with them, and if not, why not. Additionally, while in a

trial against only the individual defendants proof of the City's actual policies may or may not be relevant and admissible, it is far too early in the litigation to make that determination. While the City will undoubtedly be able to cite cases in which evidence of the relevant policies, and the defendant's deviation from those policies has been excluded at trial, each such case is factually dependent, and plaintiff can cite any number of cases where such evidence has been deemed relevant. Additionally, if proof of the relevant City policies is admitted at trial, the Court will undoubtedly by able to fashion an appropriate instruction to the jury to shield the individual defendants from any prejudice.

The City next claims that bifurcation would "protect[] plaintiff's interest in expediting trial of his constitutional claims against the defendant officers," DE 45 p. 3 ¶ 6, but has failed to explain why this is so. While plaintiff is separately moving for an extension of the time allowed for discovery, this is necessitated by the problems in locating documents which the City may not have preserved, not by any specific difficulties in discovering the City policies and practices at the time of the plaintiff's arrest and conviction. Moreover, as set forth above, the City's proposal would potentially delay his receipt of deserved compensation, since even if he lost his claims against the individual defendants who appeared before the jury, he would still be entitled to proceed on his policy and practice claim with respect to defendants, such as Depke, whose misconduct was not determined by the jury.

The City also claims that bifurcation would "eliminate[] the need for . . . extensive judicial intervention in discovery disputes," DE 45 p. 3 ¶ 6, without any indication that such disputes would occur or would necessitate judicial intervention. Thus far there have been no

discovery disputes which have needed judicial intervention, and there is no indication that this situation will change. Counsel for plaintiff and the defendants have dealt with each other extensively in the past on other cases, and have usually been able to resolve discovery disputes without the intervention of the courts, or with such intervention only when critical legal issues were at stake. So long as there is good will on both sides, there seems to be no specific reason, at this point, that there will be discovery disputes which will require the Court to get involved.

The City's claim that if bifurcation is not ordered it will "inevitabl[y]" file a motion for summary judgment which must then be decided by the Court, DE 45 p. 3 ¶ 6, sets forth no concerns which are different from any other case. And its assertion that a trial of all issues will be "lengthy and legally and factually complex," *id.*, lacks any specificity, is unsupported by any individualized argument, would likely be the case whether or not the policy claims were tried before the jury, and, if accurate, is true of any number of cases which are successfully and efficiently tried in federal court.

The City's final argument, that plaintiff's counsel are bringing this policy and practice claim purely as a way to increase their income, is frankly absurd, and once again lacks any specific evidence. Plaintiff's counsel have an obligation to their client to advance his claims in any legitimate manner, and it is obvious that evidence of the policies and practices of the City will be relevant to the claims against the individual defendants, and that proceeding with the claim against the City may afford plaintiff the only route to success. There is absolutely no support for the accusation that plaintiff's counsel have plead the policy claim as a gambit to line their own pockets.

**CONCLUSION**

The City should not be allowed to avoid defending against allegations that it was its own policies and practices which caused plaintiff's false conviction and imprisonment. Plaintiff has set forth valid claims against the City, and these claims should be dealt with in the standard manner in which claims against multiple defendants are litigated: contemporaneous discovery and trial of all claims, so that all of plaintiff's claims can be disposed of in a single proceeding.

Dated: June 11, 2008

Respectfully submitted,

/s/ John L. Stainthorp

John L. Stainthorp, G. Flint Taylor Jr.
People's Law Office
1180 N. Milwaukee
Chicago, IL 60622
773-235-0700

Peter Neufeld, Nick Brustin
Cochran Neufeld & Scheck, LLP
99 Hudson Street, 8th Floor
New York, New York 10013
212-965-9081
Attorneys for Plaintiff Jerry Miller

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2008, I electronically filed **PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF CHICAGO'S MOTION TO BIFURCATE PLAINTIFF'S § 1983 CLAIMS AGAINST IT, AND STAY DISCOVERY AND TRIAL ON THOSE CLAIMS** using the CM/ECF system which will send notification of such filing(s) to the following:

Andrew M. Hale

Eileen Letts

Terry Burns

Paul A. Michalik

Daniel M. Noland

Gregory Lacey

/s/ John L. Stainthorp