UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| Jerry Miller, ) | |
| ) | No. 08 C 773 |
| Plaintiff, ) | |
| ) | Judge Conlon |
| v. ) | Magistrate Judge Cole |
| City of Chicago, et al. ) | |
| ) | |
| Defendants. ) | |

### DECLARATION OF PETER NEUFELD IN OPPOSITION TO DEFENDANTS LENZ'S AND KRUPOWICZ'S EMERGENCY MOTION TO PREVENT ABO TESTING ON APRIL 6, 2009

Pursuant to 28 U.S.C. §1746, Peter Neufeld, declares as follows:

1. I am a partner in the firm of Cochran Neufeld & Scheck, LLP, and one of the attorneys representing plaintiff Jerry Miller in this § 1983 wrongful conviction suit. I submit this declaration in response to defendants' motion to prevent plaintiff from continuing the testing of the slip for the presence of ABO blood groups, which has been going on for most of this past week and was expected to resume Monday morning, April 6, 2009. For the following reasons, we respectfully submit that defendants' emergency motion should be rejected and plaintiff's expert, Dr. Edward Blake, should be permitted to continue with absorption inhibition testing for ABO blood group substances on Monday, April 6, so as to comply with the Court's April 17, 2009 deadline.

2. Plaintiff has been working diligently since July 2008 to obtain serology testing on the semen-stained slip worn by the victim, R.S., during the 1981 rape; a rape for which

1

plaintiff was wrongly convicted, yet ultimately exonerated through DNA testing 25 years later. Defendant Lenz, a forensic scientist at the Chicago Police Department Crime Laboratory, issued a false report in 1982 which claimed that the results of the absorption inhibition ABO blood grouping tests he conducted on the semen stain were "inconclusive." The current testing shall demonstrate that the description "inconclusive" was false and fabricated, and that, in fact, Lenz secured exculpatory results that he did not share with the prosecutor or the defense. We now know through civil discovery in this lawsuit that the actual blood group type of the real perpetrator, a serial rapist named Robert Weeks, is different from both Mr. Miller's and the victim's. Thus, ABO blood group typing on the semen stain would have revealed Weeks' distinguishing ABO type and provided powerful exculpatory evidence for Mr. Miller back in 1982, before he went to trial. The fabrication of the report and failure to disclose the true results to the prosecutor and the defense is one of the causes of Mr. Miller's wrongful conviction and nearly 25 years' imprisonment. It is also consistent with and further proof of a pattern and practice of the Chicago Police Department's failure to disclose exculpatory evidence in criminal prosecutions.

3. To conduct this serology testing, plaintiff retained as an expert Dr. Edward Blake of Forensic Science Associates in Richmond, California. Not only is Dr. Blake one of the nation's leading DNA practitioners, but, equally important for this matter, he is one of the very few scientists in America who has been around long enough to have been an expert in the absorption inhibition method for detecting ABO blood group substances. Absorption inhibition testing and the identification of ABO blood group substances – the

forensic method used in this case in 1982 by Defendant Lenz – fell out of use by the early 1990's when it was replaced with the more robust and discriminating DNA technology.

4. When plaintiff first sought to test this biological evidence, that request was opposed by the Illinois State's Attorney's office. The State's Attorney's office wanted first access to the evidence to perform DNA testing for use at the sentencing hearing of Robert Weeks, the true perpetrator of the R.S. rape, who is currently being prosecuted for several other rapes.

5. Plaintiff was informed by the State's Attorney's office that the office would conclude its own analysis in January 2009 and that therefore the evidence could be produced to plaintiff for testing at that time. On the basis of that representation from the State, this Court granted an extension until April 1, 2009, for Dr. Blake to conduct his testing and write his Rule 26 report.

6. The testing ordered by the Illinois State's Attorney's office took longer than they anticipated and the evidence remained in the custody of the Illinois State's Attorney's office, and therefore unavailable to plaintiff, until Thursday, March 26, 2009. It was shipped out to Dr. Blake on the 26th and received on Friday afternoon, March 27th.

7. On Monday, March 30, this Court found that the Illinois State's Attorney's delay in producing this evidence to plaintiff constituted good cause and granted a final extension for the submission of Dr. Blake's report until April 17, 2009.

8. Dr. Blake works in a very small lab in which the primary focus is serious pending criminal prosecutions. His work is as often for the prosecution as for the defense.

    Almost all of his cases have longstanding court-imposed deadlines. Nonetheless, given the gravity of this case and the delays occasioned by the Illinois State's Attorney, he agreed to rearrange his schedule to accommodate the deadlines in this case and to cooperate, to the extent possible, with an expert selected by Defendant Lenz's counsel, who would simply observe the examination and testing conducted by Blake. Despite serious scheduling constraints involving commitments to complete work in numerous criminal matters also with court-imposed deadlines, Dr. Blake began almost immediately upon receipt of the evidence to document, examine and test the same semen stain tested by Lenz 27 years ago. Dr. Blake realized that he had to begin immediately in order to make the April 17 deadline for the filing of his report. Dr. Blake exhaustively photographed the evidence, tested the evidence for the presence of semen, made slides to examine the stain under the microscope for the presence of sperm, and otherwise completed the necessary preliminary steps, including the securing of fresh materials to be used in the absorption inhibition test. This was all accomplished with the cooperation of defendants' retained expert, Gary Harmor, an employee of Serological Researh Institute, a lab founded by Brian Wraxall.

9. The key reason for allowing the other side to have an expert present to observe Dr. Blake's work was what turned out to be the mistaken belief that there was very little semen left to test, perhaps only enough for a single test. That would have deprived defendants of an opportunity to independently do an absorption inhibition test on the semen stain. But, after this first week's examination and preliminary testing, it is absolutely clear to both experts that there is an abundance of semen and that replicate

testing by Dr. Harmor would be easy.

10. In order to complete his testing and write a comprehensive report detailing his methodologies, analyses and findings by the final deadline, Dr. Blake was prepared to work over the weekend of April 4th writing up the preliminary data (which does not require the presence of the opposing expert) and preparing to resume the protocol on Monday, April 6th, with the actual absorption inhibition testing. Dr. Blake assured us that unless the testing resumed on Monday, April 6th he would not be able to meet the April 17 deadline. Even under this schedule, Dr. Blake understood he would have to work nonstop and on the weekends to complete the analysis and report.

11. However, we learned for the first time late on Thursday, April 2, that defendants' expert will not be available to observe ABO testing on Monday the 6th, Tuesday the 7th, Wednesday the 8th and Thursday the 9th. At the earliest (and even this is not a definite date), he could perhaps be present to watch Dr. Blake on Friday, April 10th.

12. According to the affidavit of defendants' expert, Gary Harmor, he informed another member of Dr. Blake's lab, not Dr. Blake, that he would be unavailable the week of April 6 due to his having to consult with another client in Boston, which according to him takes precedence.

13. Critically, counsel for defendants never raised this conflict when plaintiff requested and the Court permitted only a two-and-a-half-week extension of time on March 30th for Dr. Blake to complete his analysis and issue a report. In other words, either counsel for defendants never informed plaintiff or Dr. Harmor never informed counsel for defendants

that during one of the less than three weeks available for analysis, Dr. Harmor would be completely unavailable.

14. Defendants' argument that Dr. Harmor must be physically present for all ABO testing is particularly inappropriate now given the surprising results of preliminary testing conducted by Dr. Blake and observed by Dr. Harmor. I understand based on my conversations with Dr. Blake and my colleague's communications with opposing counsel that both Dr. Blake and Dr. Harmor agree that there is ample evidence available for multiple rounds of testing. Prior to actually viewing the evidence this past week, the parties were concerned that there might be insufficient evidence for any testing, let alone multiple rounds of testing. But after examining the evidence, it is clear that both experts will be able to conduct independent testing on the stains should they choose to do so.

15. We understood that Dr. Harmor wanted to physically observe the ABO testing conducted by Dr. Blake given the previous concern, now disproved, that there would be no remaining evidence for Dr. Harmor to test independently. Moreover, Dr. Harmor would concede, as would any scientist, that Dr. Blake documents every step of his testing sufficiently so that anyone can know exactly what he did and did not do. Given the fact that there is ample testable evidence, we fully expect Dr. Harmor to conduct his own independent analysis of the evidence. We further expect that Dr. Harmor and Dr. Blake may well disagree on the inferences to be drawn from the data but not on the data itself. However, defendants have not explained why Dr. Harmor must physically observe Dr. Blake conducting testing even though (1) Dr. Harmor will be able to review Dr. Blake's methodology and data in Dr. Blake's Rule 26 report and (2) Dr. Harmor should and

presumably will later conduct this same testing on his own. In fact, scientific experts for one side routinely conduct independent analysis of evidence and then report their findings. Joint testing is only required in the rare case when independent testing is not possible, but that is no longer a concern in this case.

16. Nevertheless, after receiving this last-minute objection to Dr. Blake's scheduled testing, we attempted to address defendants' concerns and reach an amicable solution to this scheduling issue. We agreed, for example, not to make any argument, to the extent one even exists, that Dr. Harmor's absence in any way limits his ability to attack Dr. Blake's findings. We further suggested that another member of Dr. Harmor's lab observe the testing, and we further agreed we would not object to Dr. Harmor reporting on any observations as if he were present.

17. In this regard, defendants have suggested that I acted inappropriately in contacting the lab which employs Dr. Harmor this past week. After hearing that Dr. Harmor would be unavailable to observe testing for almost a week and learning that counsel for defendant Lenz was out of town, I simply contacted Brian Wraxall, the founder and director of the lab employing Dr. Harmor, to see whether he personally or anyone else from the lab was available that week. I did not ask him anything about the case or about communications with counsel. I was deeply concerned about meeting the Court's deadline and so I merely asked a scheduling question, no different than the informal direct communications regarding scheduling our respective experts had been having with each other. Moreover, I understand that Mr. Wraxall communicated directly with members of Dr. Blake's lab and informed them that he was available to observe testing but had been instructed not to

7

do so by counsel for defendants.

18. Defendants have not articulated and there is no reason to delay testing so that Dr. Harmor can personally observe Dr. Blake conduct his analysis. If ABO testing is delayed and not allowed to resume on Monday, April 6th, plaintiff will not be able to meet the April 17th deadline. We respectfully request that defendants' motion be denied.

I declare under penalty of perjury that the foregoing is true and correct.

Executed On: April 4, 2009

By: /s/ Peter Neufeld
Peter Neufeld, Nick Brustin
Anna Benvenutti Hoffmann
Sarah Crowley
Cochran Neufeld & Scheck, LLP
99 Hudson Street, 8th Floor
New York, New York 10013
Tel: (212) 965-9081
Fax: (212) 965-9084

John L. Stainthorp, Joey Mogul
People's Law Office
1180 N. Milwaukee
Chicago, IL 60622
773-235-0070
773-235-6699 (fax)

Attorneys for Plaintiff Jerry Miller

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2009, I electronically filed the foregoing **Plaintiff's Affidavit in Opposition to Raymond Lenz and Thomas E. Krupowicz's Emergency Motion to Prevent the Start of ABO Testing on April 6, 2009** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

Daniel M. Noland, Terrence M. Burns,
Gregory L. Lacey, Paul A. Michalik
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606

Andrew M. Hale, Avi T. Kamionski
Christina Liu, Ebone Liggins
Andrew M. Hale & Associates, LLC
53 W. Jackson Blvd, Suite 1757
Chicago, IL 60604

Eileen M. Letts, Allen P. Walker
Kevin T. Lee, Lucille A. Blackburn
Greene & Letts
111 West Washington, Suite 1650
Chicago, IL 60602

_____
Emily Gordon